■ GENEVA TEMPS, INC., Appellant, v NEW WORLD COMMUNITIES, INC., et al., Respondents. [806 NYS2d 519]—

Order, Supreme Court, New York County (Walter B. Tolub, J.), entered January 26, 2005, which denied plaintiff's motion to consolidate this action with another pending action, unanimously reversed, on the law and the facts, without costs, and the motion granted to the extent of ordering a joint trial.

Plaintiff Geneva Temps (Geneva) is an employment agency that supplies temporary interpreters to clients. Defendant New World is a corporation engaged in community outreach and other activities requiring Geneva's services. From May 2001 through June 2002, New World principals requested services from Geneva. According to Geneva, New World represented

that it was an authorized vendor for the City of New York, and used New York City vouchers to request these services.

Pantey and Priya Kalra (the Kalras) are interpreters who worked for Geneva from June 1, 2001 to May 31, 2002. They were assigned by Geneva to work for New World, who directed them to the Administration for Children's Services (ACS), a New York City agency. Geneva paid them for their work through October 31, 2001.

By letter of December 21, 2001, the Kalras were advised that ACS had not paid Geneva for their services even though Geneva had paid the Kalras in good faith based on the vouchers they submitted. They were further advised that from that point forward they would be paid only $700 as an allowance until payment was received from ACS at which time the Kalras would be paid.

By letter of July 12, 2002, Geneva informed the Kalras that ACS had advised it that the Kalras had not rendered the services they claimed to have rendered at New World and that ACS was therefore not paying for them. In the letter, Geneva included invoices for an approximate amount of $52,000, and stated that they represented payments made by them to the Kalras for services not rendered, and that full reimbursement was due within five days.

Geneva also rendered a statement of account to New World in the amount of $128,229 for services that remained unpaid. When Geneva later allegedly learned that New World had not been authorized to use New York City vouchers, the agency billed New World at the nongovernmental rate, which came to a total of $256,459.80. When this went unpaid, Geneva commenced this action on or about April 28, 2003, against New World asserting claims of quantum meruit, breach of contract, account stated, unjust enrichment and fraud (Action 1). The complaint alleged that in reasonable reliance on New World's representations that its services were being provided to an authorized New York City vendor Geneva assigned its own employees, the Kalras, to New World to work from June 1, 2001 to May 31, 2002.

The Kalras commenced a civil action against Geneva (Action 2) on or about March 15, 2004, alleging that they had been salaried employees since 2001 but that they had not been paid for vouchers they submitted in an amount they believed to be not less than $50,000 plus interest. As a counterclaim, Geneva alleged that New World had stolen New York City vouchers and submitted them; that the Kalras were aware that false vouchers were being submitted, and that the Kalras submitted false time

sheets. It further claimed that the Kalras false representations were part of a "far-flung fraudulent scheme" to deceive the public and the City of New York and Geneva.

Geneva then moved to consolidate the two actions on August 24, 2004. It noted that Action 1 alleged that New World obtained services from Geneva based on false vouchers it provided to persons, including the Kalras, plaintiffs in Action 2. It further noted that the two actions were based on the same voucher issues, and contended that there was an identity of subject matter and the essential underlying facts, and that the proof in both cases would be either identical or complementary.

Supreme Court denied the motion. It noted that nothing in the complaint in Action 1 alleged any wrongdoing or participation by the Kalras in connection with New World. It found that consolidation might prejudice the Kalras by causing an unwarranted appearance of alignment between them and New World due to being named defendants in a single action despite the unrelated issues of liability.

For the following reasons, we reverse and grant the motion for consolidation to the extent of ordering a joint trial.

Although great deference is to be accorded to the motion court's discretion, it is well settled that there is a preference for consolidation in the interest of judicial economy where there are common questions of law and fact, unless the party opposing the motion demonstrates that consolidation will prejudice a substantial right (*Raboy v McCrory Corp.*, 210 AD2d 145, 147 [1994]; *accord Matter of Progressive Ins. Co. [Vasquez— Countrywide Ins. Co.]*, 10 AD3d 518 [2004]; *Firequench, Inc. v Kaplan*, 256 AD2d 213 [1998]; *cf. Dias v Berman*, 188 AD2d 331 [1992] [denial of motion to consolidate made on the eve of trial was not an abuse of discretion where the actions involved events that occurred in two different counties, one action was ready for trial and the other was not, and plaintiffs stipulated that they would discontinue one action if successful in the other]).

In the instant case, New World and the Kalras as the parties opposing consolidation, have not carried their burden of demonstrating prejudice to a substantial right. While New World urged in its opposition papers that consolidation was improper where it would result in prejudice, neither it nor the Kalras gave any suggestion of how they would be prejudiced. Further, the motion court's finding that the Kalras might be prejudiced by appearing to be aligned with New World should not defeat consolidation because Geneva's counterclaim clearly brought such an allegation into Action 2.

In any event, contrary to the court's finding, there is an

identity of issues and common questions of law and fact and therefore consolidation is warranted (*see Teitelbaum v PTR Co.,* 6 AD3d 254 [2004] [consolidation is mandated by judicial economy where two lawsuits are intertwined with common questions of law and fact]; *Matter of Tosca Brick Oven Bread [Lubena],* 243 AD2d 416 [1997]).

Action 1 arises out of payments Geneva made to the Kalras pursuant to vouchers they submitted which Geneva alleges were wrongfully given to them by New World. In Action 2, the Kalras seek payment pursuant to the same vouchers. Geneva's defense in Action 2 is inextricably intertwined with its claims in Action 1; namely that it is not required to pay claims that were fraudulently made. It appears therefore that resolution of both Actions 1 and 2 depends on a determination as to whether New World and/or the Kalras knowingly participated in a scheme to fraudulently obtain payment by submitting vouchers for work that was not done. Thus, the same evidence and witnesses will be required in both actions. Ultimately, we find that the cases should be heard together to avoid the possibility of inconsistent verdicts (*see Phoenix Garden Rest. v Chu,* 202 AD2d 180 [1994]; *J. Grotto & Assoc. v Lax,* 174 AD2d 394 [1991]; *Bernstein v Silverman,* 228 AD2d 325 [1996]).

Nevertheless, the Kalras correctly assert that in order to avoid jury confusion the actions should not be consolidated if that results in a party being both plaintiff and defendant as is the effect in the instant case (*see M & K Computer Corp. v MBS Indus.,* 271 AD2d 660 [2000]). We therefore grant plaintiff's motion to consolidate only to the extent of ordering a joint trial (*see Padilla v Greyhound Lines,* 29 AD2d 495, 499 [1968]; *Bass v France,* 70 AD2d 849 [1979]). Concur—Buckley, P.J., Mazzarelli, Ellerin, Catterson and McGuire, JJ.